**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

|  |  |
|---|---|
| VOCES DE LA FRONTERA, INC., <br><br>     Petitioner, <br><br>  v. <br><br> DAVE GERBER, in his official capacity as Sheriff of Walworth County; TODD J. DELAIN, in his official capacity as Sheriff of Brown County; CHAD BILLEB, in his official capacity as Sheriff of Marathon County; DAVID ZOERNER, in his official capacity as Sheriff of Kenosha County; and CHIP MEISTER, in his official capacity as Sheriff of Sauk County, <br><br>     Respondents. | No. 3:25-cv-1070 |

## STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CHARLES E.T. ROBERTS
Counsel to the Assistant Attorney General
Civil Division

CHADWICK M. ELGERSMA
United States Attorney

February 24, 2026

*Counsel for the United States of America*

**TABLE OF CONTENTS**

**Page**

**BACKGROUND** .......................................................................................................... 3

I.      Federal Immigration Enforcement .................................................................... 3

II.     Section 287(g) of the Immigration and Nationality Act ................................... 4

III.    Immigration and Nationality Act Detainers ...................................................... 9

**STATEMENT** ............................................................................................................. 10

I.      Cooperation Between ICE and State and Local Authorities, Including Through the
        Section 287(g) Program, Serves Important Federal and Public Interests. ........................11

II.     This Case Presents Removable Federal Questions. ......................................... 13

**CONCLUSION** ......................................................................................................... 15

The United States of America respectfully submits this statement of interest in accordance with 28 U.S.C. §§ 517 and 518. *See* 28 U.S.C. § 517 ("[Any officer of the Department of Justice[ ] may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in . . . a court of a State."); *id.* § 518 ("When the Attorney General considers it in the interests of the United States, he may personally conduct and argue any case in a court of the United States in which the United States is interested, or he may direct the Solicitor General or any officer of the Department of Justice to do so.").[1] The United States submits this brief to explain that the Respondent Sheriffs' cooperation with federal immigration enforcement serves important federal and public interests that would be undermined by a ruling in Petitioner's favor and that this Court is the appropriate forum for Petitioner's claims to be heard.

The United States has a substantial interest in, and long history of, working cooperatively with state and local governments on a range of law-enforcement priorities. Such priorities include violent crime, homeland security, illegal narcotics, human trafficking, and immigration. On immigration, the Federal Government regularly cooperates with state and local agencies by sharing information about aliens who are removal priorities, such as aliens who have committed serious crimes, ensuring such aliens are detained pending removal, and in other ways.

Two forms of cooperation are at issue here: *First* are federal agreements authorizing state and local law-enforcement officers directly to perform immigration enforcement functions under the Immigration and Nationality Act (INA). 8 U.S.C. § 1357(g) (also known as Section 287(g) of

---

[1] These statutes provide a mechanism for the United States to submit its views in cases in which the United States is not a party. *See, e.g.*, *Blondin v. Dubois*, 78 F. Supp. 2d 283, 288 n.4 (S.D.N.Y. 2000); *Ren-Guey v. Lake Placid 1980 Olympic Games, Inc.*, 49 N.Y.2d 771, 773 (1980) (per curiam), and are not intended to "subject[ ] it to the general jurisdiction" of a court, *Flatow v. Islamic Republic of Iran*, 305 F.3d 1249, 1252–53 & n.5 (D.C. Cir. 2002).

the INA). By statute, DHS "may enter into a written agreement with a State, or any political subdivision of a State, pursuant to which an officer or employee of the State or subdivision" may "perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States." *Id.* § 1357(g)(1). Such "function[s]" include serving arrest warrants for immigration violations, detaining aliens subject to removal, and transporting those arrested aliens to detention facilities approved by U.S. Immigration and Customs Enforcement (ICE), a component agency of the Department of Homeland Security (DHS) responsible for immigration enforcement in the interior of the country. *See id.* § 1226(a) (describing authority to arrest pursuant to a warrant issued by DHS or ICE); 8 U.S.C. § 1357(a) (describing the "powers of immigration officers"); 8 C.F.R. § 287.5 (delineating the "[e]xercise of power by immigration officers").

*Second* is the cooperation between federal immigration officials and state and local law-enforcement officers even without a formal Section 287(g) agreement that is both congressionally authorized and inherent in our Federalist system. *See, e.g.*, 8 U.S.C. §§ 1357(g)(10), 1226(a), (c), (d), 1228(a), 1231, 1103(a)(10), (11); *see*, *United States v. Santana-Garcia*, 264 F.3d 1188, 1194 (10th Cir. 2001) (state and local officers' "implicit authority" to investigate and make arrests for violations of federal immigration laws); *United States v. Janik*, 723 F.2d 537, 548 (7th Cir. 1983) (state officers' "implicit authority to make federal arrests"); *see also United States v. Hensley*, 469 U.S. 221, 231 (1985) (collective-knowledge doctrine); *Mendoza v. ICE*, 849 F.3d 408, 419 (8th Cir. 2017) ("County employees . . . reasonably relied on [ICE agent's] probable cause determination for the detainer.").

By seeking a ruling whether Respondents may rely on these authorities to cooperate with federal immigration enforcement officials—and, indeed, seeking an injunction against them

2

doing so—Petitioner has triggered 28 U.S.C. § 1441. Its broad claims (as construed by the Wisconsin Supreme Court) necessarily raise federal questions, which are actually disputed, substantial, and capable of resolution here without disrupting the federal-state balance Congress has approved. *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

**BACKGROUND**

## I.      Federal Immigration Enforcement

The federal government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). This includes authority to interview, arrest, and detain removable aliens. *See* 8 U.S.C. § 1226(a) (allowing the Secretary of Homeland Security to arrest and detain aliens pending a removal decision by an immigration judge based on an administrative warrant issued by the Secretary); *id.* § 1226(c) (stating that the Secretary "shall take into custody" aliens who have committed certain crimes when "released" and providing authority for "detainer[s]"); *id.* § 1231(a)(1)(A), (2) (allowing the Secretary to detain and remove aliens ordered removed); *id.* § 1357(a)(1), (2) (authorizing interrogation of aliens to determine a right to be in the United States and certain warrantless arrests).[2]

Although the Federal Government possesses broad power over immigration, enforcing the immigration laws is a formidable challenge. To meet that challenge, the Federal Government regularly works with state and local governments. These cooperative efforts are critical to enabling the Federal Government to identify, process for removal, and thereafter remove the hundreds of thousands of aliens who violate immigration laws (and other laws) each year. This

---

[2] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" are now read to mean the Secretary. *See Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

3

cooperation is also a key component of the decision Congress made to permit states and localities to impose criminal punishment on an alien, and to have an alien serve that punishment, before the alien is removed from the country. *See* 8 U.S.C. § 1231(a)(1)(B)(iii) (providing that the removal period does not begin until an alien in state custody is "released from detention or confinement"). Cooperating allows ICE to take into custody aliens convicted of crimes after the completion of their criminal sentence and to detain other aliens pending removal proceedings. *Id.* §§ 1225(b)(2)(A), 1226(c); *see id.* § 1231. Federal law contemplates and authorizes these cooperative efforts in service of the interests of the Federal Government, states and localities, and the public writ large. Because the Federal Government has a regulatory relationship with all aliens within the United States, its grant of permission to states and localities to pursue their criminal-enforcement interests does not affect the Federal Government's ultimate authority over criminal aliens. *Cf. Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001).

## II.      Section 287(g) of the Immigration and Nationality Act

In furtherance of these goals, Congress authorized DHS to enter into cooperative agreements with states and localities to train and permit state and local officers to participate directly in immigration enforcement efforts. Specifically, Congress added Section 287(g) to the Immigration and Nationality Act (codified at 8 U.S.C. § 1357(g)) as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). Pub. L. No. 104-208, div. C, sec. 113, 110 Stat. 3009, 3009–546 (1996). The bill was designed to "strengthen[ ] the rule of law by cracking down on illegal immigration at the border, in the workplace, and in the criminal justice system—without punishing those living in the United States legally." President William J. Clinton, *Statement on Signing the Omnibus Appropriations Act*, 1996 U.S.C.C.A.N. 3388, 3391 (Sept. 30, 1996); *see* H.R. Rep. 104-828 (Sept. 24, 1996) (Conf. Rep.) (describing

4

IIRIRA as a bill "to improve deterrence of illegal immigration to the United States" and "to reform the legal immigration system"). Under 287(g) agreements, qualified state and local officers may perform specified immigration-enforcement functions relating to investigating, apprehending, and detaining aliens. 8 U.S.C. § 1357(g)(1)–(9).

At least three statutory requirements ensure that a state or local officer covered by a 287(g) agreement complies with federal law. First, the INA provides that the state or local officer must be "determined by the [Secretary] to be qualified to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States (including the transportation of such aliens across State lines to detention centers)." *Id.* § 1357(g)(1). Second, the INA states that the 287(g) agreement shall require that the state or local officer "have knowledge of, and adhere to, Federal law relating to the [delegated] function, and shall contain a written certification that the officers or employees performing the function under the agreement have received adequate training regarding the enforcement of relevant Federal immigration laws." *Id.* § 1357(g)(2). And third, the INA provides that in enforcing immigration laws, the state or local officer "shall be subject to the direction and supervision of the [Secretary]." *Id.* § 1357(g)(3); *see United States v. Sosa-Carabantes*, 561 F.3d 256, 257–58 (4th Cir. 2009).

In general, deputized officers (commonly known as "287(g) officers") may be authorized to do the following: (1) interrogate an individual believed to be an alien about his right to be or remain in the United States and process for immigration violations any such alien arrested for committing a federal, state, or local offense;[3] (2) serve arrest warrants for immigration

---

[3] 8 U.S.C. § 1357(a)(1); 8 C.F.R. § 287.5(a)(1).

5

violations;[4] (3) administer oaths and take and consider evidence;[5] (4) prepare charging documents, including a "Notice to Appear" that initiates removal proceedings;[6] (5) issue immigration detainers;[7] and (6) detain and transport arrested aliens subject to removal to ICE-approved detention facilities.[8] Specific authorities may vary by jurisdiction depending on the scope of the agreement.

Even without a formal agreement, the statute authorizes states and localities to "communicate with the [Secretary] regarding the immigration status of any individual," and separately to "cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States," 8 U.S.C. § 1357(g)(10), when that cooperation is pursuant to a "request, approval, or other instruction from the Federal Government," *Arizona*, 567 U.S. at 410; *see* 8 U.S.C. § 1226(a), (c); *Lozano v. City of Hazleton*, 724 F.3d 297, 321 n.30 (3d Cir. 2013). Such cooperation may include: "provid[ing] operational support in executing a warrant;" "allow[ing] federal immigration officials to gain access to detainees held in state facilities;" "arrest[ing] an alien for being removable;" and "responding to requests for information about when an alien will be released from their custody." *Arizona*, 567 U.S. at 410. The INA permits such cooperation whether it is imposed by state or local directive or is implemented *ad hoc* by a state or local law enforcement agency. *See id.* at 413.[9] And the great weight of authority shows that 8 U.S.C. § 1357(g)(10) authorizes local cooperation with ICE and comports with the Fourth Amendment. *See, e.g.*, *id.* at 410; *United States v. Ovando-*

---

[4] 8 U.S.C. § 1226(a); 8 C.F.R. § 287.5(e)(3).

[5] 8 U.S.C. § 1357(b); 8 C.F.R. § 287.5(a)(2).

[6] 8 U.S.C. §§ 1225(b), 1228, 1229, 1231(a)(5); 8 C.F.R. §§ 235.3, 238.1, 239.1, 241.8.

[7] 8 U.S.C. §§ 1226(c)(3), 1357(d); 8 C.F.R. § 287.7.

[8] 8 U.S.C. § 1357(g)(1); 8 C.F.R. § 287.5(c)(6).

[9] Indeed, it does so even in the face of state or local prohibitions on such cooperation, because such interference with federal immigration enforcement would be preempted.

*Garzo*, 752 F.3d 1161,1164 (8th Cir. 2014); *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 189 (5th Cir. 2018); *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 467 (4th Cir. 2013) (detention by state officer lawful when "at ICE's express direction"); *Rios v. Jenkins*, 390 F. Supp. 3d 714, 724–26 (W.D. Va. 2019); *Lopez-Lopez v. Cnty. of Allegan*, 321 F. Supp. 3d 794, 799 (W.D. Mich. 2018); *Tenorio-Serrano v. Driscoll*, 324 F. Supp. 3d 1053, 1065 (D. Ariz. 2018); *Perez-Ramirez v. Norwood*, 322 F. Supp. 3d 1169, 1171 (D. Kan. 2018); *Comm. for Immigr. Rights of Sonoma Cnty. v. Cnty. of Sonoma*, 644 F. Supp. 2d 1177 (N.D. Cal. 2009); *Canseco Salinas v. Mikesell*, No. 18-cv-30057, 2018 WL 4213534 (Colo. Teller Cnty. Dist. Ct. Aug. 19, 2018).

The cooperative efforts described above—whether pursuant to a formal 287(g) agreement or without one (for example, through cooperation under 8 U.S.C. § 1357(g)(10))—occur under color of *federal* authority, rather than state authority, for purposes of liability. "An officer or employee of a State or political subdivision of a State acting under color of authority under *this subsection*, or *any agreement entered into under this subsection*, shall be considered to be acting under color of *Federal authority* for purposes of *determining the liability, and immunity from suit*, of the officer or employee in a civil action brought under Federal or State law." 8 U.S.C. § 1357(g)(8) (emphases added). And "[i]n performing a function under this subsection, an officer or employee of a State or political subdivision of a State shall be subject to the direction and supervision of the Attorney General." *Id.* § 1357(g)(3). "This subsection" includes both 8 U.S.C. § 1357(g)(1) (and so includes formal 287(g) agreements) and 8 U.S.C. § 1357(g)(10) (and so includes cooperation without a formal agreement). *E.g.*, *Santos*, 725 F.3d at 463 ("8 U.S.C. § 1357(g)(8) provides that a local law-enforcement officer 'acting under . . . any agreement [with ICE under Section 1357(g)] shall be considered to be acting under color of federal authority for

7

purposes of determining liability . . . in a civil action.'"); *Silva v. United States*, 866 F.3d 938, 942 (8th Cir. 2017) ("Section 1357(g)(8) would take effect if any such claim were brought against a local officer seeking damages."); *see also Santos v. Frederick Cnty. Bd. of Comm'rs*, No. L-09-2978, 2010 WL 3385463, at *4 (D. Md. Aug. 25, 2010), *rev'd on other grounds*, 725 F.3d 451 (4th Cir. 2013) (arrest at ICE's request); *Arias v. ICE*, No. 07-cv-1959, 2008 WL 1827604, at *13–15 (D. Minn. Apr. 23, 2008) (joint immigration task force resulting in arrests).

Section 287(g)'s chief architect, Senator Chuck Grassley (R-IA),[10] explained that the measure was motivated in part by the story of "an Iowa college student named Justin Younie," who "was murdered by an illegal alien who had been removed from the State of Iowa once before because of his illegal status." 142 Cong. Rec. S11850-51 (Sept. 30, 1996) (statement of Sen. Grassley). The measure was intended to allow state and local officers to fill in when federal officials lacked the resources to enforce immigration law. Senator Grassley stated, "Just a few weeks ago, local police had to release a truckload of illegal aliens because the [federal agency precursor to ICE] wouldn't—or, as they might say, 'couldn't'—respond just then," and, as a consequence, the individuals "find their way into a job and into the underground economy, get lost," and the Federal Government would later "spend thousands of dollars more to apprehend the very same people [who] were in the custody for a short period of time of these local law enforcement people." *Id.* at S11851. Senator Grassley emphasized that allowing "local authorities to apprehend, detain, and transport illegal aliens" was an "especially important step for the interior States, such as my State of Iowa, that are distant from the borders" and have few federal immigration officers. *Id*.

---

[10] *See* H.R. Rep. No. 104-828, at 208 (Conf. Rep.); S. Rep. No. 104-249, at 35-36 (Apr. 10, 1996) (Senate Judiciary Committee).

### III.    Immigration and Nationality Act Detainers

States and localities frequently cooperate with federal immigration enforcement by responding to federal requests for assistance, often contained in immigration detainers, including those issued by ICE or U.S. Customs and Border Protection (CBP), components of DHS responsible for immigration enforcement . An immigration detainer notifies a state or locality that DHS intends to take custody of a removable alien who is detained in state or local custody, and asks the state or locality to cooperate with DHS in that effort in two main respects: (1) by providing DHS with advance notification of the alien's release; and (2) by maintaining custody of the alien for up to 48 hours, based on DHS's determination that it has probable cause to believe that the alien is removable, until DHS can take custody. *See* 8 C.F.R. § 287.7(a) (describing notification of release), (d) (describing request for continued detention). Statutes authorizing such action include 8 U.S.C. §§ 1103(a)(3), 1226(a), (c), 1231(a), 1357(g), and 1357(d); *see, e.g.*, *McLean v. Crabtree*, 173 F.3d 1176, 1186 (9th Cir. 1999). Because such administrative warrants are valid means of effecting federal custody, *Abel v. United States*, 362 U.S. 217, 233–34 (1960), courts have upheld both issuing and cooperating with detainers, *see, e.g.*, *City of El Cenizo, Tex. v. Texas*, 890 F.3d 164, 180, 189 (5th Cir. 2018); *Galarza v. Szalczyk*, 745 F.3d 634, 645 (3d Cir. 2014); *Tenorio-Serrano*, 324 F. Supp. 3d at 1065–66; *Lopez-Lopez*, 321 F. Supp. 3d at 799; *Perez-Ramirez*, 322 F. Supp. 3d at 1172 (holding that cooperation with an ICE detainer was lawful); *Canseco Salinas*, 2018 WL 4213534.

DHS's detainer form, Form I-247A, sets forth the basis for DHS's determination that it has probable cause to believe that the subject is a removable alien. The form states that DHS's probable cause is based on: (1) a final order of removal against the alien; (2) the pendency of removal proceedings against the alien; (3) biometric confirmation of the alien's identity and a

9

records match in federal databases that indicate, by themselves or with other reliable information, that the alien either lacks lawful immigration status or, despite such status, is removable; or (4) the alien's voluntary statements to an immigration officer, or other reliable evidence that the alien either lacks lawful immigration status or, despite such status, is removable. Form I-247A at 1, https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf.

CBP and ICE issue detainers in different circumstances. CBP issues detainers when its officers or agents encounter individuals who are suspected of violating immigration laws, often during border enforcement operations or at ports of entry. When such individuals are arrested by other law enforcement agencies for criminal offenses, CBP may issue a detainer to facilitate their transfer into federal custody. ICE issues detainers when its officers identify individuals in state or local custody who are suspected of violating immigration laws and are removable from the United States. ICE requests that state or local authorities provide advance notice of the individual's release date and maintain custody for up to 48 hours, allowing ICE to assume custody and review their immigration status before release. The detainer process helps ensure that individuals who pose a risk to national security or public safety, or who have violated immigration laws, are not released into the community before CBP or ICE can review their immigration status.

## STATEMENT

The United States's ability to enforce the immigration laws depends in many circumstances upon the cooperation of state and local law-enforcement agencies. The 287(g) Program is a vital tool for cooperative enforcement of federal immigration laws and the promotion of public safety, enabling qualified state and local officers to effectively perform the

10

functions of a federal immigration officer under the direct supervision of the Federal Government. The Sheriffs' 287(g) agreements serve these and other important public interests. So too does the cooperation more broadly authorized by Congress explicitly and by our Federalist system inherently with respect to immigration detainers. Petitioner's broad claims seek to preclude key aspects of each of these forms of cooperation, thereby undermining important federal and public interests and raising federal questions under 28 U.S.C. § 1441.[11]

## I.   Cooperation Between ICE and State and Local Authorities, Including Through the Section 287(g) Program, Serves Important Federal and Public Interests.

Cooperation pursuant to Section 287(g) enhances the safety and security of our Nation's communities by allowing ICE Enforcement and Removal Operations to partner with state and local law-enforcement agencies to identify and remove criminal aliens from the country and uphold the integrity of federal immigration laws. Through the 287(g) Program, state and local law enforcement and ICE work together to remove aliens involved in gang activity, violent crimes, human trafficking, organized crime, sex offenses, drug smuggling, money laundering, and many other crimes. This enhanced cooperation also promotes the rule of law by deterring potential offenders and by enforcing against a greater number of actual offenders. The 287(g)

---

[11] The Sheriffs argue that removal is proper also under 28 U.S.C. § 1442. *See* Dkt. 13 at 17–30. This brief does not address that alternative ground for removal or the timeliness of removal. However, Section 287(g) includes two provisions that may further inform the Court's consideration of the federal-officer question, should it be necessary, both of which apply to cooperation pursuant to either a Section 287(g) agreement or Section 287(g)(10): 8 U.S.C. § 1357(g)(3) ("In performing a function under this subsection, an officer or employee of a State or political subdivision of a State *shall be subject to the direction and supervision of the Attorney General.*" (emphasis added)); *id.* § 1357(g)(8) ("An officer or employee of a State or political subdivision of a State acting under color of authority under this subsection, or any agreement entered into under this subsection, *shall be considered to be acting under color of Federal authority* for purposes of determining the liability, and immunity from suit, of the officer or employee in a civil action brought under Federal or State law." (emphasis added)).

11

Program also enhances state and local law-enforcement capabilities through valuable training. ICE partners with all 287(g) participants to ensure training both on how to perform delegated functions and on the law related to those functions. *See* 8 U.S.C. § 1357(g)(2). Cooperation with respect to detainers more broadly, whether pursuant to a Section 287(g) agreement, to Section 287(g)(10), or otherwise, serves similar goals.

Those crucial law-enforcement, public-safety, and rule-of-law interests will be undermined by the relief that Petitioner seeks. By precluding cooperative agreements and cooperation aimed at promoting those goals, a ruling for Petitioner would endanger Wisconsin residents. Countless dangerous and criminal aliens will remain unapprehended. In the area of responsibility including Wisconsin (the Chicago AOR), over 12,300 convicted criminals were arrested by ICE between October 2020 and December 2024. ICE Administrative Arrest Statistics, https://www.ice.gov/statistics. Over 5,000 more had pending criminal charges when they were arrested by ICE. *Id.* Without continued state and local cooperation, similar unapprehended individuals will put officers and community members alike at risk. *See, e.g.*, DHS, *ICE Arrests Illegal Alien Who Killed Two Highschool Sweethearts in Drunk Driving Car Wreck in Sanctuary Jurisdiction of Wisconsin* (Aug. 15, 2025).[12] Losing these valuable forms of cooperation would gravely harm the public interest. *See Make the Road States, Inc. v. Harran*, No. 2025-04200 (Bucks Cnty., Pa. Ct. Common Pleas Oct. 15, 2025) (concluding that a sheriff's cooperation pursuant to a 287(g) agreement was "clearly lawful under Pennsylvania jurisprudence" and "reasonable and necessary in fulfilling his lawful duty to keep the . . . citizens of [the] County safe").

---

[12] https://www.dhs.gov/news/2025/08/15/ice-arrests-illegal-alien-who-killed-two-highschool-sweethearts-drunk-driving-car

**II.     This Case Presents Removable Federal Questions.**

The foregoing background and interests help demonstrate this case's removability under 28 U.S.C. § 1441. At bottom, Petitioner seeks both (a) to invalidate aspects of each Respondent Sheriff's 287(g) agreement with the *Federal* Government and (b) to enjoin Respondents from exercising various explicit and implicit *federal* authorities for cooperating with the *Federal* Government. *See* Dkt. 1-2 at 27–28 ("Statement of Relief Sought"). That is why the Wisconsin Supreme Court recognized the implications for those federal authorities in its order granting leave to commence an original action. *See* Dkt. 1-2 at 96. Such questions satisfy all four criteria courts assess to determine whether a case arises under federal law and should be decided in a federal forum. *See Gunn*, 568 U.S. at 258.

*First*, these federal questions are "necessarily raised," *id.*, because the Petition requires the deciding court to determine whether there are any federal sources of authority for the Respondents to detain individuals "after all state law bases for custody have ended." Dkt. 1-2 at 8. Otherwise, the court could not determine whether such detention is lawful and whether Petitioner's requested injunction "prohibiting the Respondents from holding a person pursuant to an ICE detainer after they were otherwise entitled to release under state law" should issue. *Id.* at 28. And if that injunction were to issue, it would invalidate aspects of each Respondent Sheriff's Section 287(g) agreement with the Federal Government and prevent them from exercising various explicit and implicit federal authorities for cooperating with the Federal Government.

*Second*, these federal questions are "actually disputed," *Gunn*, 568 U.S. at 258, because Petitioner contends that *no* source of federal authority authorizes detention past the date of entitlement "to release under state law." Dkt. 1-2 at 28. Respondents contend that several federal sources of authority do. *See* Dkt. 13 at 8–10 (identifying Section 287(g) agreements, Section

13

287(g)(10) statutory authority, and inherent authority derived from federal law). Additional sources of federal statutory authority may also inform the answer to this dispute. *See supra* at 2. That dispute should be resolved in a federal forum.

*Third*, it is difficult to conceive of a more "substantial" federal question, *Gunn*, 568 U.S. at 258, than immigration enforcement, *see Arizona*, 567 U.S. at 394–95. Whether and to what extent the Federal Government may continue to rely on Respondents' invaluable cooperation in that vital endeavor are questions of utmost *federal* importance. *See supra* Background, Part I.[13] More specifically, this case puts at issue the meaning and scope of multiple federal statutes and legal principles, as well as substantial agreements to which the Federal Government is a party. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005) ("The meaning of the federal [statutory] provision[s] is an important issue of federal law that sensibly belongs in federal court."); *Cnty. of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1028 (N.D. Cal. 2005) ("Interpreting the federal statute and contract at issue here may significantly affect federal interests. Determination of the federal issues in this case could heal or injure the complex regulatory scheme . . . ."). Where immigration enforcement authority goes to the heart of the action, a federal forum must be available to protect the federal sovereign's unique interests relating to that plenary federal power, even (and perhaps especially) where a challenger targets someone cooperating in such enforcement.

*Fourth* and finally, this case is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Issues of federal statutory and regulatory law predominate this action. In particular, the Section 287(g) agreements

---

[13] And it is not just the five Respondents. ICE has active or pending 287(g) agreements with almost two-dozen such offices in Wisconsin. *See* ICE's 287(g) Program (participating and pending agencies last updated Feb. 20, 2026), https://www.ice.gov/identify-and-arrest/287g.

14

are approved by DHS and ICE and their terms are "administered pursuant to federal laws and regulations." *Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 468 (7th Cir. 2015). So too for the cooperation pursuant to Section 287(g)(10) and other federal authorities. As both Petitioner and Respondents point out, similar lawsuits about the validity of such cooperation "have been brought nationwide." *Id.* "In the aggregate, these cases have the potential to substantially influence the scope and success of the [federal] program," as well as federal immigration enforcement more broadly. *Id.* "Accordingly, the federal government has a strong interest in these issues being decided according to uniform principles." *Id.* That supports federal jurisdiction under 8 U.S.C. § 1441. *See id.*

*   *   *

Thus, "it is plain that a controversy respecting the construction and effect of the [federal] laws is involved and is sufficiently real and substantial to bring the case within the jurisdiction of the district court." *Hopkins v. Walker*, 244 U.S. 486, 489 (1917).

**CONCLUSION**

The United States respectfully submits that the Court should deny the Petitioner's Remand Motion.

Dated: February 24, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CHARLES E.T. ROBERTS
Counsel to the Assistant Attorney General
Civil Division

*/s/ Chadwick M. Elgersma*
CHADWICK M. ELGERSMA
United States Attorney
222 W. Washington Avenue, Suite 700
Madison, Wisconsin 53703
Tel. (608) 264-5158

15

Fax (608) 264-5724
Chadwick.Elgersma@usdoj.gov

*Counsel for the United States of America*

16